UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-CV-60883-WILLIAMS/VALLE

REINIER FUENTES,

    Plaintiff,

v.

CLASSICA CRUISE
OPERATOR LTD, INC.,

    Defendant.
_____/

**REPORT AND RECOMMENDATION TO DISTRICT JUDGE**

THIS MATTER is before the Court upon Defendant Classica Cruise Operator Ltd., Inc.'s Motion for Summary Judgment (the "Motion"). (ECF No. 35). United States District Judge Kathleen Williams has referred the Motion to the undersigned for a Report and Recommendation. (ECF No. 37); *see also* 28 U.S.C. § 636. The Court has reviewed the Motion, the record, all supporting and opposing filings, the exhibits attached thereto, and is otherwise fully advised. For the reasons set forth below, the undersigned recommends that the Motion be **GRANTED**.

**I.    INTRODUCTION**

On or about May 13, 2018, Plaintiff Reinier Fuentes was a passenger on the *Grand Classica* cruise ship operated by Defendant. The ship was returning to the Port at West Palm Beach after a two-night cruise to Grand Bahama, Bahamas. While standing in line waiting to disembark the vessel, Plaintiff observed non-party Clynt S. Hadley and other male passengers attempt to cut in front of the line. Plaintiff told Mr. Hadley to "go to the back of the line, don't try to skip." A verbal altercation between the two followed, with Mr. Hadley ultimately punching Plaintiff in the

face. After another individual in Mr. Hadley's group joined the fight and jumped on Plaintiff, all three men fell to the ground and Plaintiff suffered a fractured elbow. Plaintiff subsequently underwent surgery at Homestead Hospital and was hospitalized for several days.

On April 3, 2019, Plaintiff commenced this one-count negligence action against Defendant Classica Cruise Operator generally alleging that Defendant failed to: (i) reasonably and properly train its security personnel; (ii) have adequate security measures, including adequate security presence and surveillance cameras; (iii) warn Plaintiff of the danger of being physically assaulted while onboard the vessel; (iv) promulgate and enforce policies and/or procedures designed to prevent passengers from physically assaulting other passengers; and (v) exercise reasonable care under the circumstances. *See generally* (ECF No. 1).

## II. MATERIAL FACTS

On the evening of May 12, 2018, Plaintiff encountered Mr. Hadley while Plaintiff and his wife were playing foosball. At that time, Mr. Hadley bumped into the foosball table and commented along the lines that "[Plaintiff] should let [his wife] win." (ECF No. 48-1) (Pls. Dep. at 90:1-23). Plaintiff did not respond to Mr. Hadley's comments nor did he report this encounter to any of Defendant's employees. Pls. Dep. 92:5-20.

The next morning, on May 13, 2020, during the usually smooth disembarkation process, Customs and Border Patrol ("CBP") had stopped the disembarkation process and disallowed passengers from leaving the vessel. (ECF No. 48-2) (Sayyed Dep. 43:4-8). Consequently, the area surrounding the Lobby of Deck 5 became crowded with passengers. Sayyed Dep. 44:3-7; (ECF No. 48-4) (5/13/2018 Incident Report) ("Incident Report").

Plaintiff and his wife were standing in the immigration line in the hallway area surrounding Lobby Deck 5 waiting to disembark the vessel. While in line, Plaintiff noticed Mr. Hadley and

2

three other individuals unexpectedly appear next to Plaintiff and cut in line. Pls. Dep. 106:10-107:1-4; 107:25-108:4. Plaintiff told Mr. Hadley to "go to the back of the line, don't try to skip," and a verbal altercation ensued between Plaintiff and Mr. Hadley. Pls. Dep. 108:5-19.

Security Guard Azzad Sayyed observed the argument, radioed the Chief of Security, and immediately attempted to separate Plaintiff and Mr. Hadley. Sayyed Dep. 44:8-24; 47:18-48:6. While Guard Sayyed was talking to Plaintiff in an effort to deescalate the situation, Mr. Hadley punched Plaintiff in the face. Incident Report; Pls. Dep. 112:11-113:25. At this point, another member of Mr. Hadley's group joined in the fight, with all three men falling to the ground. Pls. Dep. 109:2-05; 109:23-110:3. Plaintiff landed on his right elbow and fractured it. *Id.* 101:24-102:4; 110:1-3; 136:9-10.

Thereafter, the Chief of Security arrived on scene and requested immediate assistance from the G4S Security at the Port who, in turn, contacted the local Police Department. Police Officers and Fire rescue arrived on scene and administered first aid to Plaintiff. Incident Report. Although Plaintiff was advised to go to the hospital immediately, Plaintiff first went home before going to Homestead Hospital, where he remained for four days. Pls. Dep. 131:20-132:12; 135:2-20; 136:19-24.

### III.     LEGAL STANDARDS

*1. Summary Judgment Generally*

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant shoulders the initial burden of demonstrating the absence of a genuine issue of material fact. *See Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Once the movant

3

satisfies this burden, "the burden shift[s] to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

"Rule 56 requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Mid-Continent Cas. Co. v Arpin & Sons, LLC*, 261 F. Supp. 3d 1245, 1249-50 (S.D. Fla. 2017) (quotation marks omitted) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). "Thus, the nonmoving party 'may not rest upon the mere allegations or denials of [its] pleadings, but must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 1250 (citing *Anderson*, 477 U.S. at 248).

In considering a motion for summary judgment, it is not the Court's duty or function to try or decide factual issues. *Gross v. S. Ry. Co.*, 414 F.2d 292, 297 (5th Cir. 1969).[1] Rather, "[i]ts only duty is to determine whether or not there is an issue of fact to be tried." *Id.* Further, the Court must consider all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion, and resolve all reasonable doubts against the moving party. *Gross*, 414 F.2d at 297; *Stanley Indus., Inc. v. W.M. Barr & Co., Inc.*, 784 F. Supp. 1570, 1572 (S.D. Fla. 1992) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). The Court is not, however, required to accept all of the non-movant's factual characterizations and legal arguments. *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458-59 (11th Cir. 1994). An issue of fact is "material" if it is a legal element of the claim under the applicable substantive law that might affect the outcome

---

[1] In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981), this Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued prior to the close of business on September 30, 1981.

of the case.  *Burgos v. Chertoff*, 274 F. App'x 839, 841 (11th Cir. 2008) (citation omitted).  If a genuine issue of fact exists for trial, summary judgment should not be granted.  *See* Fed. R. Civ. Pro. 56(a).  An issue of fact is genuine if the record taken as a whole could lead a reasonable jury to find for the nonmoving party.  *Burgos*, 272 F. App'x at 841.

  *2. Plaintiff's Negligence Claim*

  Plaintiff's claim is within the reach of admiralty jurisdiction and is measurable by the standards of maritime law.  *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 628, (1959); *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1334 (11th Cir. 1984); *see also Lipkin v. Norwegian Cruise Line Ltd.*, 93 F. Supp. 3d 1311, 1319 (S.D. Fla. 2015) (Williams, J.).  Under maritime law, a shipowner has a duty to exercise reasonable care towards those lawfully aboard the vessel.  *Kermarec*, 358 U.S. at 630, 632.  A carrier by sea, however, is not liable to passengers as an insurer, but is only liable for its negligence.  *Kornberg,* 741 F.2d at 1334.

  Generally, to state a negligence claim under maritime law, a plaintiff must allege that: (1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm.  *Lipkin*, 93 F. Supp. 3d at 1319 (citing *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir.2012)); *see also Aronson v. Celebrity Cruises, Inc.*, 30 F. Supp. 3d 1379, 1392 (S.D. Fla. 2014) (Williams, J.) (finding that general allegations of a duty to warn failed to state a negligence claim).  Further, under maritime law, "a shipowner owes the duty of exercising reasonable care towards those lawfully aboard the vessel who are not members of the crew."  *Lipkin*, 93 F. Supp. 3d at 1319 (citing *Kermarec*, 358 U.S. at 628).  As a prerequisite to liability, the defendant must have actual or constructive notice of the risk-creating condition, unless the defendant created the hazardous condition.  *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318,

1322 (11th Cir. 1989); *Caldwell v. Carnival Corp.*, 944 F. Supp. 2d 1219, 1224 (S.D. Fla. 2013); *Long v. Celebrity Cruises, Inc.*, 982 F. Supp. 2d 1313, 1316-17 (S.D. Fla. 2013).

## IV.  ANALYSIS

### A. The Parties' Arguments

Defendant generally argues that it lacked actual or constructive notice that Plaintiff and Mr. Hadley would get into a physical altercation during the disembarkation process of the *Grand Classica* on the morning of May 13, 2018. *See* (ECF No. 35 at 4-6). Defendant asserts that neither Plaintiff nor Mr. Hadley had made any formal complaints about the other to any ship staff during the cruise. *Id.* at 4. Moreover, Defendant argues that there were no prior incidents substantially similar to the incident that resulted in Plaintiff's injury, i.e., a physical altercation on the immigration line while waiting to disembark the ship. *Id.* at 5-6. Thus, Defendant argues, without knowledge of a dangerous condition, it could not have breached its duty to Plaintiff. *Id.* at 4.

In opposing the Motion, Plaintiff generally argues that Defendant had actual and constructive notice of the dangerous condition giving rise to Plaintiff's injuries. *See generally* (ECF No. 52). More specifically, Plaintiff argues that Defendant failed to prevent the fight between Plaintiff and Mr. Hadley despite Defendant having security personnel onboard who were trained on the possibility that a verbal altercation might escalate into a physical altercation. *Id.* at 2, 6, 8, 11. Plaintiff also argues that Defendant was on notice because Security arrived on scene during the verbal exchange and attempted to intervene prior to the physical altercation between Plaintiff and Mr. Hadley. *Id.* at 6-7, 8-9. In addition, by analogy to premises liability cases, Plaintiff argues that there was sufficient time for Defendant to prevent the physical altercation (i.e., 10-15 minutes). *Id.* at 12. Alternatively, Plaintiff asserts that Defendant created the risk when, in violation of Defendant's standard operating procedures, it allowed passengers to crowd the Lobby

6

of Deck 5 after CBP temporarily stopped the disembarkation process. *Id.* at 8, 10. Thus, Plaintiff argues that because Defendant created the risk, notice is "arguably" not required. *Id.* at 10. Accordingly, Plaintiff asserts that there is an issue of triable fact regarding whether Defendant fulfilled its obligations to Plaintiff.[2] *Id*. at 11.

### B. There is No Evidence that Defendant Had Actual or Constructive Notice

To be liable for negligence, a defendant needs to have had actual or constructive notice that a condition creates a risk. *Keefe*, 867 F.2d at 1322; *Everett v. Carnival Cruise Lines,* 912 F.2d 1355, 1358-59 (11th Cir. 1990). A defendant's general knowledge that a condition exists is not by itself sufficient; rather, the defendant must also know that the condition is dangerous. *See Chaparro*, 693 F.3d at 1337. Importantly, knowledge of a danger cannot be automatically imputed to the defendant solely because the defendant may have created the condition. *Everett*, 912 F.2d at 1358-59. Nevertheless, a plaintiff can establish notice through evidence of previous injuries or defendant's prior warnings regarding the same danger. *See Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1280 (11th Cir. 2015) (holding that defendant had notice that the floor was slippery when wet because prior passengers had slipped and defendant had previously posted a warning).

*1. No Prior Complaints or Prior Similar Incidents*

Plaintiff's arguments that Defendant had constructive or actual notice fail for several reasons. First, it is undisputed that neither Plaintiff nor Mr. Hadley lodged any type of complaint against the other prior to their physical altercation. (ECF No. 36 at 5) (hereinafter "Def. SMF" ¶ 14, which Plaintiff admits). For example, although Mr. Hadley allegedly purposely bumped into

---

[2] Although not relevant to this Motion, Plaintiff's Complaint includes a demand for jury trial. (ECF No. 1 at 1, 5). Defendant's Answer, however, notes that when admiralty jurisdiction is pled, there is generally no jury trial. (ECF No. 4 at 3). Nonetheless, Defendant did not make a motion to strike the jury demand and the case remains scheduled as a jury trial. *See* (ECF Nos. 21 and 66) (Scheduling Order, as amended); (ECF No. 70) (Pretrial Stipulation).

the game table and made a seemingly off-putting comment to Plaintiff and his wife while they were playing foosball the night before the physical altercation, Plaintiff ignored Mr. Hadley's comments and did not report this encounter to any of Defendant's employees.  Pls. Dep. 92:5-20.  Thus, this brief pre-incident encounter between Plaintiff and Mr. Hadley cannot serve as the basis for finding that Defendant had constructive notice of a dangerous condition or of Mr. Hadley's predisposition towards violence.  *See, e.g., Malley v. Royal Caribbean Cruises, Ltd.*, 713 F. App'x 905, 908 (11th Cir. 2017) (noting that defendant lacked notice of an unreasonably high coaming where there were no calls or complaints about the height); *Cohen v. Carnival Corp.*, 945 F. Supp. 2d 1351, 1355 (S.D. Fla. 2013) (concluding that notice was not established where there were no accident reports, passenger comment reviews/forms, or reports from safety inspections alerting defendant of any potential safety concern);.

Second, there is simply no evidence of any physical assaults or aggressive behavior aboard the *Grand Classica* other than the fight at issue in this case.  (ECF No. 36 at 5) (Def. SMF ¶¶ 15, 24, which Plaintiff partially admits); (ECF No. 48-5 at 262) (list of incidents of aggressive behavior).  Indeed, Plaintiff admits that there is no allegation of prior altercations occurring during the disembarkation process.  (Def. SMF ¶ 15); (ECF No. 36-2) (Plummer Dec. ¶ 11); (ECF No. 48 at 2-3) (Pls. SMF ¶ 15).  Thus, there is nothing that would have put Defendant on notice of the possibility that a fight would occur between Plaintiff and Mr. Hadley upon disembarkation.  *See, e.g., Aronson*, 30 F. Supp. 3d at 1394 (granting motion to dismiss where there were no allegations of prior injuries or of safety concerns that would put defendant on notice of a dangerous condition).

Third, Plaintiff's reliance on a report of a physical altercation on a different ship two days before Plaintiff's incident does not establish notice in this case.  The May 11, 2018 incident, which is undisputed, involves a verbal altercation on the *Grand Celebration* (Defendant's fleet mate),

8

culminating in a physical altercation. (ECF No. 48-5) (Plummer Dep. 36:1-18); (ECF No. 48-5 at 262) (Ex. 6 to Plummer Dep.) (list of incidents of aggressive behavior). This incident, however, involved a domestic dispute inside a stateroom and not a fight between unrelated passengers while waiting to disembark. Plummer Decl. ¶¶ 8-9. Although Mr. Plummer initially testified that he did not know the details of the May 11, 2018 incident, he later submitted an affidavit explaining the incident. *Compare* Plummer Dep. 36:1-18 *with* Plummer Dec. 36-2 ¶¶ 8-9. There is nothing in the record to suggest that Mr. Plummer's affidavit is inaccurate or that the May 11, 2018 incident aboard the fleet mate ship was in any way similar to the fight between Plaintiff and Mr. Hadley. Here, Plaintiff failed to present evidence of incidents "substantially similar" to his to establish actual or constructive notice to Defendant. *Taiariol v. MSC Crociere S.A.*, 677 F. Appx. 599, 601 (11th Cir. 2017) (concluding that reports of slip-and-fall incidents on defendant's ships generally was insufficient to establish notice)*; see also Howard-Bunch v. Carnival Corp.*, No. 1:18-CV-21867-KMM, 2019 U.S. Dist. LEXIS 35024, at *11 (S.D. Fla. Mar. 4, 2019) (finding slip-and-fall accidents on different ships were not "substantially similar" to establish defendant's notice); *Newell v. Carnival Corp.*, No. 15-CV-24499, 2017 WL 5513634, at *3 (S.D. Fla. Nov. 16, 2017) (granting summary judgment where plaintiff failed to produce evidence of prior similar accidents); *Burdeaux v. Royal Caribbean Cruises, Ltd.*, No. 11-22798-CIV, 2012 WL 3202948, at *5 (S.D. Fla. Aug. 3, 2012), *aff'd*, 562 F. App'x 932 (11th Cir. 2014) (concluding that the requisite notice must be specific to the dangers known to exist in a particular place); *cf. Horne v. Lines,* No. 15-21031-CIV, 2016 WL 4808791, at *5 (S.D. Fla. Jan. 25, 2016) (denying summary judgment where defendant had actual notice of assault through passenger calls to security, which raised a triable fact on whether defendant was negligent in failing to respond more quickly).

2. *Crowding on Lobby of Deck 5 Was Not an Inherently Dangerous Condition*

In opposing summary judgment, Plaintiff argues that, in violation of its own policies and standard operating procedures, Defendant created the crowded conditions on Deck 5 after CBP temporarily halted the disembarkation process. (ECF No. 52 at 8, 14). According to Plaintiff, "[a]rguably, notice was not even required based upon Defendant's conduct in creating the situation," which resulted in Mr. Hadley feeling that he could cut the line. *Id.* at 8, 10.

As discussed previously, the standard of reasonable care generally requires that a cruise ship operator have actual or constructive notice of the risk-creating condition. *Keefe*, 867 F.2d at 1322; *Malley.,* 713 F. App'x at 909 ("The ship must not only know that the condition exists, but also know that the condition is dangerous."); *Merideth v. Carnival Corp.*, 49 F. Supp. 3d 1090, 1093-94 (S.D. Fla. 2014) (concluding that plaintiff introduced sufficient testimony that defendant was previously aware of potentially hazardous condition). Where a cruise ship operator created the unsafe or foreseeably hazardous condition, a plaintiff need not prove notice in order to show negligence. *Long*, 982 F. Supp. 2d at 316–17 (citations omitted) (denying motion for summary judgment where there was genuine issue of material fact on whether defendant created the allegedly dangerous conditions). Further, "[a] cruise line's duty to warn extends to known dangers which are not apparent and obvious, and there is no duty to warn of dangers that are of an obvious and apparent nature." *Cohen*, 945 F. Supp. 2d at 1357; *Merideth,* 49 F. Supp. 3d at 1094.

Applying these legal principles to the facts of this case, the undersigned finds that Defendant did not violate its policies and standard operating procedures regarding disembarkation and did not create a dangerous condition that resulted in Plaintiff's altercation with Mr. Hadley. For example, it is undisputed that Defendant's security personnel and crew are trained in crowd control. (ECF No. 48-3); Moras Dep. 60:7-61:21; 62:16-63:12; Sayyed Dep. 22:19-23:3;

10

Plummer Dep. 140:21-141:15.  Moreover, the disembarkation process was generally organized and proceeded smoothly.  Plummer Dep. 26:815-22.  Prior to the fight between Plaintiff and Mr. Hadley, no physical altercations had occurred during disembarkation.  Plummer Dep. 49:4-8; 50:3-9; 52:6-9; 54:6-11.  On the morning of May 13, 2018, however, CBP temporarily stopped the disembarkation process.  Sayyed Dep. 43:4-8.  Consequently, the area surrounding the Lobby of Deck 5 became crowded with passengers.  Sayyed Dep. 44:4-7; Incident Report.  Plaintiff testified that there were "a lot of people," "like maybe 20," who ended up in a "massive line."  Pls. Dep. 98:22-99:12.  That, according to Plaintiff, is what prompted Mr. Hadley to try to jump the line.  Pls. Dep. 99:18-21.

     Based on this factual sequence, there is insufficient evidence to conclude that Defendant created an unsafe or foreseeably hazardous condition during disembarkation.  There is nothing inherently dangerous about standing in line to disembark a vessel.  *See, e.g., Thompson v. Oceana Cruises, Inc.*, No. 15-CIV-MORENO, 2015 U.S. Dist. LEXIS 181531, at *5  (S.D. Fla. Oct. 13, 2015) (concluding that there was nothing inherently unsafe about directing that crew member use the step ladder to clean vents).  Further, the undersigned cannot automatically impute awareness of a danger simply because the defendant may have created the condition.  *Everett*, 912 F.2d at 1358-59.  Lastly, there is also no evidence that the crowd waiting to disembark was unruly.  Indeed, Plaintiff testified that he witnessed no other fights on the ship as everyone seemed to be on the ship to "have fun."  Pls. Dep. 153:15-18.  As well, this was not the first time that CBP had stopped disembarkation in order to give limited CBP agents time to properly process the passengers.  Moras Dep. 83:11-84:21.  However, there had never been a physical altercation during the disembarkation process.  That a fight occurred between Plaintiff and Mr. Hadley while disembarking does not mean that the disembarkation process itself was unsafe or foreseeably hazardous.

### 3. *No Evidence of Violations of Standard Operating Procedure*

The undersigned also finds no factual support for Plaintiff's argument that Defendant violated its standard operating procedure during the May 13, 2018 disembarkation. According to Plaintiff's expert, "the crew failed to follow the ship's usual and customary protocol for passenger debarkation." (ECF No. 52 at 8); *see also* (ECF No. 48-9 at 7) (Expert Witness Report of Kimberly Petersen, hereinafter "Petersen Report"). But other than Plaintiff's arguments and the summary opinion of his expert, there is no factual support for this conclusion.[3] *See* (ECF Nos. 48 at 8, 52 at 8).

Similarly, the deposition of Defendant's Chief of Security does not support Plaintiff's argument. More specifically, the Chief of Security testified that the usual disembarkation procedure included ship and crew staff managing the access points, and allowing guests to exit. Moras Dep. 81:10-82:24. On May 13, 2018, CBP had stopped the disembarkation process. *Id.* 81:10-16. When this occurred, Defendant's procedure was to make an announcement that passengers should remain in the lounges or in their cabins until further instruction. *Id.* 81:17-23. If passengers needed to return to the Lobby of Deck 5 to make any payment or resolve other cruise issues, they were directed to proceed in front of the Lobby and into the gangway to exit. *Id.* 85:7-14. All other passengers were to follow the lines on either side of the ship and join the lines to exit the ship. *Id.* 85:16-19. Although the Chief of Security disagreed that passengers congregated in the Lobby and surrounding hallway, he conceded that the Incident Report reflected that the Deck Lobby was "crowded." *Id.* 84:22-85:2; 86:13-19. Even viewed in the light most favorable to Plaintiff, this testimony does not create a question of material fact on whether the disembarkation

---

[3] Indeed, although the expert states that her conclusions are based "according to [Defendant's] staff," (ECF No. 48-9 at 7), the expert fails to identify the staff member who provided the information or explain how she reached this conclusion.

12

process violated Defendant's procedures. As noted above, crowding alone is not inherently dangerous.

### 4. *Security Personnel, Training, and Guards Arrival On Scene Do Not Establish Notice*

Plaintiff also argues that Defendant's employment of security officers is "indicative of some evidence of notice." (ECF No. 52 at 8). Relatedly, Plaintiff asserts that Defendant's security force was inadequate, which likely contributed to Defendant's inability to stop the physical altercation. *Id*. The undersigned disagrees.

The record confirms that at least two Security Guards responded to the altercation between Plaintiff and Mr. Hadley. Guard Sayyed intervened during the verbal altercation to deescalate the conflict right before Mr. Hadley punched Plaintiff in the face. Incident Report. The Chief of Security arrived shortly after the physical altercation and also attempted to separate the guests. *Id.* Plaintiff has presented no evidence that the number of security personnel was insufficient or in violation of industry standard.[4] *Cf. Carideo v. Whet Travel, Inc.*, No. 16-23658-CIV, 2018 WL 1461678, at *1 (S.D. Fla. Mar. 23, 2018) ("barely" surviving summary judgment where plaintiff's claims for negligent security included an extensive record of assaults and other risks aboard the ship).

As well, there is no evidence to establish that security personnel were improperly trained. To the contrary, both Guard Sayyed and the Chief of Security testified that they were trained pursuant to the Cruise Vessel Security and Safety Act ("CVSSA"), which included crowd control measures and other security training. Moras Dep. 59:19-63:12; Sayyed Dep. 22:16-25:20.

---

[4] Further, Plaintiff's reliance on *Meyers v. Ramada Hotel Operating Company, Inc.*, 833 F.2d 1521 (11th Cir. 1987) is unavailing. *See* (ECF No. 52 at 8). *Meyers* involved the foreseeability of an assault on a hotel guest where the court found strong "evidence of criminal incidents involving threats to the safety of persons on the premises." *Meyers*, 833 F.2d at 1524.

Plaintiff does not allege nor is there any evidence that this training was inadequate or non-compliant with industry standards.

Next, Plaintiff argues that Defendant had actual notice of a dangerous condition in that the verbal altercation occurred 10-15 minutes before the physical altercation and security personnel were on scene before Mr. Hadley punched Plaintiff. (ECF No. 52 at 12). Contrary to Plaintiff's arguments in the response to the Motion, however, Plaintiff testified that he was "blind-sided" by Mr. Hadley's punch and that the fight was a "spur of the moment type of thing." Pls. Dep. 116:20-117:1; 121:5-9.

Lastly, it is undisputed that Plaintiff's injuries resulted from Mr. Hadley's physical assault. When, as here, the dangerous condition is a criminal act perpetrated by a non-crewmember, the cruise line may be liable in negligence only if the criminal act was foreseeable. *Doe v. NCL (Bahamas) Ltd.*, No. 11-22230-CIV, 2012 WL 5512347, at *6 (S.D. Fla. Nov. 14, 2012) (citation omitted); *see also Lipkin*, 93 F. Supp. at 1328 (noting that, absent a special relationship, there is generally no duty to control the conduct of a third person to prevent that person from causing physical harm to another). Plaintiff's arguments notwithstanding, Defendant could not have reasonably foreseen Mr. Hadley's physical assault on Plaintiff. *See, e.g., Banosmoreno v. Walgreen Co.*, 299 F. App'x 912, 915 (11th Cir. 2008) (granting summary judgment where evidence failed to establish that defendant was aware of assailant's dangerous propensities).

Having concluded that there is no evidence that Defendant had notice of a dangerous condition, which is a prerequisite to liability under maritime law, the undersigned concludes that Defendant had no duty to protect Plaintiff from a physical assault inflicted by a fellow passenger during the disembarkation process. *See, e.g., Lipkin*, 93 F. Supp. 3d at 1324 (granting summary judgment where there was no evidence that defendant had requisite notice).

## V.     RECOMMENDATION

For the reasons set forth above, the undersigned respectfully recommends that Defendant Classica Cruise Operator Ltd., Inc.'s Motion for Summary Judgment (ECF No. 35) be **GRANTED**.

Within **fourteen (14)** days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this district. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. J. R. 4(b) (allowing 14 days for written objections unless a different time is prescribed by the Court). The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1 (2020); *see Thomas v. Arn*, 474 U.S. 140 (1985).

**DONE AND ORDERED** in Chambers, at Fort Lauderdale, Florida, on this September 11, 2020.

_____
ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

cc:  U.S. District Judge Kathleen Williams
     Counsel of Record